```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                    WESTERN DIVISION
```
_____

**UNITED STATES OF AMERICA,**      )
                                    )
    **Plaintiff,**                 )
                                    )
**v.**                              )    No. <u>08-20021</u> D/P
                                    )
**DALE MARDIS,**                    )
                                    )
    **Defendant.**                 )

_____

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS
INDICTMENT FOR VIOLATION OF SEPARATION OF POWERS**
_____

Before the court is defendant Dale Mardis's Motion to Dismiss Indictment for Violation of Separation of Powers. (D.E. 128). The motion was referred to the Magistrate Judge for a report and recommendation. The court proposes the following findings of fact and conclusions of law and recommends that the Motion to Dismiss be denied.

**I.   PROPOSED FINDINGS OF FACT**

In 2001, a federal grand jury in the Western District of Tennessee convened to investigate the disappearance of Mickey Wright, a Memphis and Shelby County Code Enforcement Officer. A task force comprised of federal and local law enforcement agencies uncovered evidence indicating that Wright disappeared on April 17, 2001, and that he was last seen at a used car lot owned

by defendant Dale Mardis in Memphis. While there, Wright appeared to have written a "courtesy" citation as part of his duties.

This first federal grand jury ultimately did not return charges against any individuals. The matter was investigated by state authorities while federal prosecutors held in abeyance further efforts to investigate potential charges under federal law. After its investigation, the State of Tennessee indicted Mardis for first degree murder and sought the death penalty. He was represented in state court by attorney Howard Wagerman, and the State of Tennessee's lead prosecutor was Assistant District Attorney General Tom Henderson. In the week before Mardis's state court trial was set to begin, Wagerman and Henderson began discussing a possible plea deal and reached a tentative agreement whereby Mardis would plead *nolo contendere* to second degree murder and serve 100% of a sentence of thirteen and one-half years incarceration.[1] Wishing to resolve all potential charges at the same time, Wagerman contacted Assistant U.S. Attorney Jennifer Webber and inquired whether there were any pending

---

[1]"The plea of nolo contendere is a plea by which the accused does not expressly admit guilt but nonetheless waives the right to a trial, and by which the court is authorized to proceed as if the accused were guilty." 22 C.J.S. Criminal Law § 519 (Supp. 2009).

federal charges that might be brought against his client.[2] She indicated that she possessed a file relating to a contemplated, but not yet initiated, federal firearms charge.

Webber then called Henderson to inform him that the federal government would not prosecute the federal firearms charge if the plea agreement in state court increased Mardis's sentence to fifteen years incarceration. Accordingly, on April 5, 2007, Mardis entered a *nolo contendere* plea to the charge of second degree murder in the Criminal Court for Shelby County and was sentenced to fifteen years in prison to be served at 100%. Henderson required as a condition of the plea agreement that Mardis inform the prosecution about what happened to Wright's body so that his family might obtain some sense of closure. To satisfy this requirement, Wagerman wrote a note providing information about the disposition of Wright's remains. The note did not mention Mardis or how Wagerman obtained the information.

A subsequent federal investigation commenced under the lead of Joe Everson, a Shelby County Sheriff's Deputy and a Special Deputy U.S. Marshal. A second federal grand jury was then impaneled and returned an indictment of Mardis on January 30,

---

[2]Webber had been involved in the first federal grand jury that investigated Wright's disappearance.

2008, for a civil rights murder in violation of 18 U.S.C. § 245, as well as using a firearm to accomplish the murder in violation of 18 U.S.C. 924(j).  (D.E. 4.)  According to the federal indictment, Mardis murdered Wright on account of his race and color, as well as his employment by a governmental entity.[3] (Id.)  Mardis faces the possibility of a death sentence if he is convicted.

In the present motion to dismiss, Mardis alleges that following his guilty plea, Wright's family immediately contacted Congressman Steve Cohen of the Ninth Congressional District of Tennessee, to seek his assistance in persuading the federal government to prosecute Mardis.  Mardis claims that Congressman Cohen set up a meeting with the Wright family and My Harrison, the Special-Agent-in-Charge of the Memphis FBI Field Office.  He also contends that Congressman Cohen contacted the United States Attorney for the Western District of Tennessee and the Shelby County Attorney General about the case.  Congressman Cohen also held a press conference outside the Federal Building in Memphis publicly announcing his promise to assist the Wright family in

---

[3]Wright was African-American and Mardis is Caucasian.  In justifying the plea agreement, Henderson expressed to the Shelby County Criminal Court his belief that the State of Tennessee could not prove a racial basis for the murder at trial, though he had once believed it could.

4

obtaining a federal prosecution of Mardis.  Mardis claims that, shortly thereafter, the United States Attorney's Office reopened its investigation of Mardis with the assistance of the Civil Rights Division of the Department of Justice.[4]  After the federal indictment was returned by the grand jury, Mardis asserts that Congressman Cohen made public statements during a locally televised debate with congressional candidates and on his re-election website crediting himself with assisting the Wright family in their pursuit of federal charges against Mardis.  Finally, Mardis argues that Congressman Cohen's "vested interest" in the federal prosecution is evidenced by his introduction of a bill before the House titled The Mickey Wright Act, which sought to amend the federal criminal code to prohibit the transportation of any portion of a corpse of a homicide victim across a state line to prevent its use as evidence in a criminal prosecution for such homicide.  (Def.'s Mot. to Dismiss 5, citing H.R. 3386, Aug. 3, 2007.)

In his motion to dismiss, Mardis alleges that Congressman Cohen "used his political stature to coerce the U.S. Attorney's

---

[4]Mardis also notes that during this time, Congressman Cohen was a member of both the House Committee on the Judiciary and the House Subcommittee on the Constitution, Civil Rights and Civil Liberties, a division of the Committee on the Judiciary.

5

Office to pursue the prosecution of Mardis," and in so doing, "has violated the constitutional designation of exclusive powers of the executive and has tainted the U.S. Attorney's indictment in this case." (Def.'s Mot. to Dismiss 5-6.)

## II.   PROPOSED CONCLUSIONS OF LAW

The separation of governmental powers into the legislative, executive, and judicial branches is fundamental to our constitutional form of government. Although the separation of powers doctrine is not explicitly enunciated in the Constitution, "the principle of separation of powers derives from the structure of the Constitution and the allocation of power within that structure." United States v. Williams, 15 F.3d 1356, 1360 (6th Cir. 1994). The Supreme Court has recognized that "all courts which have addressed themselves to the matter start on common ground in the recognition of the intent of the Framers that the powers of the three great branches of the National Government be largely separate from one another." Buckley v. Valeo, 424 U.S. 1, 120 (1975). Officials in one branch should not be forced to act by any other branch: "[t]he fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others, has often been stressed and is

6

hardly open to serious question." Humphrey's Ex'r v. United States, 295 U.S. 602, 629 (1935). The Constitution sets up a system of "checks and balances" to enforce the separation among the branches, and to ensure that no one branch becomes too powerful in such a way that it encroaches on the other branches. Williams, 15 F.3d at 1360; Morrison v. Olson, 487 U.S. 654, 693 (1988).

Many acts commonly engaged in by lawmakers, including basic constituent services and speeches made outside of Congress, do not constitute legislative acts. United States v. Gravel, 408 U.S. 606, 625 (1972); United States v. Rose, 28 F.3d 181, 188 (D.C. Cir. 1994). The Supreme Court has clarified this distinction between legislative and individual acts:

> That [members of Congress] generally perform certain acts in their official capacity as [members of Congress] does not necessarily make all such acts legislative in nature. Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies — they may cajole, and exhort with respect to the administration of a federal statute — but such conduct, though generally done, in not protected legislative activity.

Gravel, 408 U.S. at 625.

Even if this court were to accept as true the allegations contained in Mardis's motion to dismiss, at most Congressman Cohen may have "cajoled" or "exhorted" the United States

7

Attorney's Office with respect to the federal statutes under which Mardis was charged. When Congressman Cohen made statements or took action in assisting the Wright family in their pursuit of federal charges against Mardis, his actions were not legislative in nature for purposes of the separation of powers doctrine. Because his were not legislative acts, they could not have been committed in violation of the separation of powers doctrine.

Although the branches of government are each constitutionally responsible for their own functions, "the Constitution by no means contemplates total separation of each of these three essential branches of Government." Buckley, 424 U.S. at 121. Rather, the Founders "saw that a hermetic sealing off of the three branches of Government from one another would preclude the establishment of a Nation capable of governing itself effectively." Id. The very system of checks and balances upon which our system of government depends requires interaction among the branches in order to function. While the Supreme Court has made clear that each branch must be free from the "control or coercive influence" of the other branches, it has never maintained that each branch should be free of any influence from the other branches. See Humphrey's Ex'r, 295 U.S. at 629. Rather, "our constitutional system imposes upon the Branches a

degree of overlapping responsibility, a duty of interdependence the absence of which 'would preclude the establishment of a Nation capable of governing itself effectively.'" Mistretta v. United States, 488 U.S. 361, 381 (1989) (quoting Buckley, 424 U.S. at 121).

Because of the interdependence among the three branches of government, members of Congress are constitutionally permitted to interact with the members of the executive branch, such as the Department of Justice. Indeed, common "constituent service," including communicating with constituents and administrative agencies, is a routine part of every member of Congress's job. Newell v. Brown, 981 F.2d 880, 886-87 (6th Cir. 1992); see also Rose, 28 F.3d at 188.

In Newell, a congressman acted on behalf of one of his constituents, the daughter of a murder victim, and contacted the Department of Corrections to urge the transfer of a prisoner who had been convicted of the murder from a medium security facility to a maximum security facility. Newell, 981 F.2d at 882. The prisoner challenged his heightened state of confinement and the constitutionality of the congressman's actions as they were involved with his confinement. The Sixth Circuit opined that there was no violation of the separation of powers doctrine.

9

Id., at 886-87.  Rather, the court noted that the congressman "was simply providing the kind of 'constituent service' that every member of Congress renders routinely upon request," and "[f]or the federal judiciary to subject members of Congress to liability for simply doing their jobs would be unthinkable."  Id.

Similarly, even if the court were to accept as true all of the allegations made by Mardis in the present motion, at most Congressman Cohen was acting on behalf of his constituents, the family and friends of Mickey Wright, when he contacted the U.S. Attorney's Office and other agencies regarding the federal prosecution of Mardis.  Such interaction between members of different branches of government, including between individual legislators and the U.S. Attorney's office, does not violate the separation of powers doctrine.  See, e.g., The Federalist No. 47 (James Madison); Gravel, 408 U.S. at 625; Buckley, 424 U.S. at 121; Morrison, 487 U.S. at 693; Williams, 15 F.3d at 1360.

### III.  CONCLUSION

For the above reasons, the court recommends that Mardis's Motion to Dismiss be DENIED.

Respectfully submitted,

                        s/ Tu M. Pham
                        TU M. PHAM
                        United States Magistrate Judge

<u>July 21, 2009</u>
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN TEN (10) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**